| 23 | 529 |
| f25 | 400 |
| 23 | 529 |
| 26 | 52 |

## In re AUERBACH'S ESTATE; WILSON v. MEYER et al.

DECEASED PARTNER—PERSONAL PROPERTY — SALE — CONFIRMATION — HIGHEST BIDDER—RIGHT OF APPEAL—PARTNERSHIP AFFAIRS—SETTLEMENT—SURVIVING PARTNER—RIGHTS—WAIVER.

1. Constitution, article 8, section 9, provides that appeals shall lie from such final orders and decrees of the court in the administration of estates as shall be provided by law. Revised Statutes, section 3300, declares that appeals shall lie from final orders and decrees of the court in administering estates. *Held,* that an order

Vol. 23 u—34

Wilson v. Meyer.

refusing to confirm a sale of a decedent's personal property consti-
tuted a final order, within the meaning of the Constitution, and
was appealable.[1]

2. Where executors, under an order of court, published notices of a
   sale of the testator's personal property, and W. deposited the
   certified check required of bidders, and submitted the highest bid,
   and filed a petition praying that the sale to him be confirmed, he
   was entitled to prosecute an appeal from an order refusing to
   confirm the sale.

3. Revised Statutes, section 3918, provides that on the death of one
   partner the surviving partner shall have the right to continue in
   possession of the partnership property, and to settle its business,
   but the interest of the decedent must be included in the inventory,
   and be appraised as other property. The court ordered the per-
   sonal property of a deceased partner, which was in the possession
   of the surviving partner, and constituted a part of the firm prop-
   erty, to be sold by the decedent's executors. *Held*, that, since the
   court had no jurisdiction to order the sale, it was not error to
   refuse to confirm it.

4. A deceased partner's will provided that the business of the firm
   should be settled gradually, so as to not injure the estate or
   prejudice the surviving partner. There was no evidence that the
   deceased executor or legatees were dissatisfied with the manage-
   ment of the estate. *Held*, that a delay of five years in the settle-
   ment of the firm affairs by the surviving partner did not justify
   an order directing the deceased's executors to sell the deceased's
   interest in the firm.

5. The fact that a surviving partner bid on the deceased partner's
   interest when it was offered for sale by the deceased's executors
   did not constitute a waiver of the surviving partner's right to settle
   the firm business.

Decided June 11, 1901.

Appeal from District Court, Salt Lake County.—*Hon. W. C. Hall*, Judge.

Petition by R. G. Wilson for an order confirming a sale
of the interest of Frederick H. Auerbach, deceased, in the firm

---

[1] North Point Consol. Irr. Co. v. Utah & S. L. Canal Co., 14 Utah
155, 46 Pac. 824; Watson v. Mayberry, 15 Utah 265, 49 Pac. 479.

of F. Auerbach & Bro. From an order refusing to confirm the sale, petitioner appeals.

AFFIRMED.

*Messrs. Day & Street* for appellant.

*Messrs. Marshall, Royle & Hempstead* for respondent executors.

*Ogden Hiles, Esq.,* for respondent S. H. Auerbach.

BARTCH, J.—This is an appeal from an order of the district court, sitting as a court of probate, refusing to confirm a sale of certain personal property which had been made by the executors of the estate of Frederick H. Auerbach, deceased, pursuant to an order of the court. It appears from the record that the subject of the sale consisted of the decedent's share (half interest) in the property of the firm of F. Auerbach & Bro. The same had been exposed to sale by the executors, and bids received therefor from Samuel H. Auerbach, the surviving partner, and R. G. Wilson; the latter being the highest bidder. Upon receipt of the bids, a petition for confirmation of sale in favor of Wilson was presented to the court by the executors, and one by Wilson, and objections thereto by the surviving partner. After the hearing on these petitions and objections the court "ordered that the sale of said personal property be declared null and void, as the court had no jurisdiction in the premises in ordering said sale." From this order Wilson appealed, and counsel for respondent Auerbach now challenges his standing in this court by a motion, concurred in by counsel for executors, that the cause be not heard upon its merits, on the ground that no appeal lies from the order. Whether or not such an order is appealable

must be determined by reference to the provisions of the constitution and statute upon this subject. Section 9, article 8, Constitution, so far as material here, reads, "Appeals shall also lie from the final orders and decrees of the court in the administration of decedent estates, and in cases of guardianship, as shall be provided by law." By statute (section 3300, Rev. St.), *inter alia*, it has been enacted, "Appeals shall also lie from the final orders and decrees of the court in the administration of decedent estates." Here, as will be observed, is an express constitutional and a statutory provision granting the right of appeal, not only from the final decrees, but also from the final orders of a court in the administration of decedent estates. If, then, the order in controversy was a final order, there existed a right of appeal. That it was a final order there appears to be, upon reflection, little room for doubt. The order was based upon the question of jurisdiction, and ended the controversy between the parties litigant. Neither party could proceed further. It was such a determination of the proceedings as, undisturbed, will operate as a bar to any similar application for sale and confirmation, founded upon the existing facts. Such an order is final, within the meaning and intent of the Constitution and statute. North Point Consol. Irr. Co. v. Utah & S. L. Canal Co., 14 Utah 155, 46 Pac. 824; Watson v. Mayberry, 15 Utah 265, 49 Pac. 479; Spence v. Parker, 57 Ala. 196; Robinson v. Glancy, 69 Pa. 89; Ferguson v. Carson, 13 Mo. App. 29. Counsel for the respondent appear to rely upon the two cases first above cited as sustaining their position on this point, but we apprehend that a careful examination will show that the doctrine of those cases does not militate against the views hereinbefore expressed. The constitutional provision therein considered and construed relates simply to final judgments, while the one herein interpreted relates to final orders and decrees. The former does not in express terms refer to final orders.

It is further insisted that Wilson was not a party to the suit, but was a mere stranger thereto, and that therefore he had no right of appeal.    It is true, he was not originally a party to the proceedings, but under the order of sale made by the court the executors undertook to sell the property.    They published notice of sale, and invited bids from all persons who might desire the purchase, upon the condition that each bidder should accompany his bid with a certified check in the sum of $10,000, payable to the executors.    In accordance with the notice of sale, the appellant submitted a bid for the property, and became the highest bidder.    Thereupon the executors recognized him as the purchaser, and appeared by petition before the court, asking that the sale so made to him be confirmed.    The appellant likewise appeared by petition in his own behalf for confirmation, while the surviving partner, who was also a bidder, appeared by petition in opposition to confirmation.    The court, with all these parties before it, granted a hearing, and thereupon declared the sale null and void. The appellant thus became at least a quasi party to the proceedings, and it would seem, if the court erred in making the order, he was, in equity, entitled to have it reviewed on appeal.    By his bid and payment of the amount required as a deposit, he subjected himself quoad hoc to the jurisdiction of the court, and could, provided the court had jurisdiction to order the sale, have been required to perform his contract specifically, so as to complete the purchase.    There would seem to be no good reason why such a purchaser should not acquire a corresponding right to seek such relief, when dissatisfied with the action of the court, as the rules of equity proceedings afford.    In Delaplaine v. Lawrence, 10 Paige 602, Chancellor Walworth said:    "In sales made by a master under decrees and orders made by this court, the purchasers who have bid off the property and paid their deposits in good faith are considered as having acquired inchoate rights, which

entitle them to a hearing upon the question whether the sales shall be set aside. And, if the court errs by setting aside the sale improperly, they have a right to carry the question, by appeal, to a higher tribunal." Blossom v. Railroad Co., 1 Wall. 655, 17 L. Ed. 673; Butterfield v. Usher, 91 U. S. 246, 23 L. Ed. 318. We are of the opinion that, under the facts and circumstances of this case, the appellant was entitled to pursue his remedy by appeal.

Passing now to the merits of the case, the main question is, did the court err in refusing to confirm the sale? The record shows that Samuel H. Auerbach is the surviving partner of the firm of F. Auerbach & Bro., which firm was engaged in the mercantile business, and the property which was the subject of the sale belonged to the firm, and was exposed to sale as the share of the deceased partner. Respecting the status of a surviving partner as to the firm assets, the statute (section 3918, Rev. St.) provides: "When a partnership exists between the decedent, at the time of his death, and any other person, the surviving partner has the right to continue in the possession of the partnership, and to settle its business, but the interests of the decedent in the partnership must be included in the inventory and be appraised as other property. The surviving partner must settle the affairs of the partnership without delay and account with the executor or administrator, and pay over such balance as may from time to time be payable to him in right of the decedent. Upon the application of the executor or administrator, the court or judge may, whenever it appears necessary, order the surviving partner to give a bond in a prescribed sum or render an account, and in case of neglect or refusal may, after notice, compel it by attachment; and the executor or administrator may maintain against him any action which the decedent could have maintained." Under these provisions a surviving partner is entitled to continue in possession of the partnership for the purpose of settling up its

business; and this, in the absence of any testamentary provision directing otherwise, he must do without delay, and account for and pay to the executor or administrator of the deceased partner, from time to time, any balance payable in right of the decedent. He may be required to give bond, and for any failure in the performance of duty is amenable to any action, at the instance of the executor or administrator, which the decedent could have maintained. This statute is simply declaratory of the common law, and does not change the common-law doctrine that a surviving partner is entitled to the possession and management of the joint property for the purpose of winding up the affairs and business of the partnership and the payment of its debts. For such purposes the legal title to all the joint personal property, upon the dissolution of the partnership by the death of one or more of the partners, becomes immediately vested in the survivor, as trustee, and it is thereupon his duty to dispose of it in good faith for the best interests of the decedent's estate and all concerned. A court, even upon the application of an executor or administrator, cannot order a summary sale of such property. It has no jurisdiction to make such an order, and no executor or administrator has authority to execute it. Nor has a court jurisdiction to state or settle a disputed account between an executor and the surviving partner, although it may order the latter to "render an account." No court, therefore, in a case like this, or in the absence of any breach of duty on the part of the surviving partner, can, by ordering a sale of the decedent's share in the partnership, deprive the surviving partner of his possession and control of the joint property. In 1 Lindl. Partn., 342, note 1, it is said: "When a partnership is dissolved by the death of one or more of the partners the legal title to all the personal property belonging to the firm becomes vested exclusively in the survivor as trustee for the purpose of paying the debts of the firm, and he is entitled to the pos-

session and control of the firm assets for the purpose of winding up its affairs and distributing the residue among the parties entitled." So, in 3 Kent, Comm., 64, it is said: "The surviving partner or partners, as the case may be, is alone suable at law, and he is entitled to the possession and disposition of the assets, to enable him to discharge the debts and settle the concern." Mr. Justice Harlan, in Emerson v. Senter, 118 U. S. 3, 6 Sup. Ct. 981, 30 L. Ed. 49, said: "Where the partnership is dissolved by the death of one partner, the surviving partner is entitled to the possession and control of the joint property for the purpose of closing up its business." Likewise, Mr. Chief Justice Fuller, in Riddle v. Whitehill, 135 U. S. 621, 10 Sup. Ct. 924, 34 L. Ed. 283, said: "In cases of dissolution by death, surviving partners are invested with the exclusive right of possession and management of the whole partnership property and business, for the purpose of paying the partnership debts and disposing of the effects of the concern for the benefit of themselves and the estate of the deceased." Section 3918 was doubtless borrowed from California. It is like section 1585, Code Civ. Proc. Cal.; both treating of the same subject. The enactment has on several occasions received judicial interpretation and application by the supreme court of that State on the same point that is here the subject of discussion. In Tompkins v. Weeks, 26 Cal. 51, the court said: "The court had no jurisdiction to make the order, and the administrator no authority to execute it. The partnership was dissolved by the decease of Miner. The partnership property was assets of the firm, and subject to the exclusive management and control of the surviving partner. It was not assets of the estate in the hands of the administrator. Only the share of the deceased in the residuum of the partnership assets after the affairs of the partnership should be wound up and the debts paid would be assets of the estate in the hands of the administrator. The administrator had no au-

thority to intermeddle at all with the partnership affairs, ex-cept so far as he was entitled to call upon the surviving partner to proceed and close up the partnership affairs, and account to him for the share of the surplus belonging to the estate. The authority of the administrator only extended to settling up the affairs of the estate, paying the debts, and distributing the re-mainder, under the direction of the probate court, to the par-ties interested." So, in Gleason v. White, 34 Cal. 258, it was said: "When the partnership is dissolved by the death of one of the partners, its assets, debts, and credits remain as distinct from those of its late members, until its affairs are wound up, as before the dissolution. The surviving partner is to proceed and wind up the affairs of the partnership, pay its debts out of the assets, if sufficient, and divide the residue, if any, among those entitled to it." Theller v. Such, 57 Cal. 447; Andrade v. Superior Court, 75 Cal. 459, 17 Pac. 531; 2 Lindl. Partn., 593, 614; 1 Pars. Cont. 200, 201; Heath v. Waters, 40 Mich. 457; Blaker v. Sands,. 29 Kan. 551; Robertshaw v. Hanway, 52 Miss 713; Shipe's Appeal, 114 Pa. 205, 6 Atl. 103; Barry v. Briggs, 22 Mich. 201; Filley v. Phelps, 18 Conn. 294. It is true, in the case at bar, the winding up of the affairs of the partnership had already continued for a period of five years since the dissolution occurred; but this delay was occasioned because of a provision in the will of the deceased, that his in-terests in the concern should "be liquidated and wound up and divided" among his "residuary legatees within the period of five years from and after" his death, and hence furnished no sufficient reason to warrant the executors to interfere by invok-ing the aid of the court to sell the property. Nor did it give the court jurisdiction to do so. It was the desire of the testator, as expressed in the will, that the business of the part-nership should be settled and wound up "gradually, by degrees, in such a manner" as not to work to the injury of the estate, "nor to the prejudice or hardship" of his brother, the surviv-

ing partner. Nor does it appear that the executors or the legatees were or are dissatisfied with the management of the business. Under these circumstances, the surviving partner had the right to object to proceedings, the inevitable sequence of which, as is apparent from the record, would be to prejudice his interests and work a hardship upon him. This, doubtless, has been recognized by the executors; for they are now in this court, united with him, asking that the order declaring the sale null and void be affirmed. Nor is there anything in the record which would warrant us in holding, as is insisted by the appellant, that the surviving partner waived his legal rights in the premises. A waiver is "the relinquishment or refusal to accept of a right." Bouv. Law Dict. It is effective only when it is made intentionally and with knowledge of the circumstances. Bennecke v. Insurance Co., 105 U. S. 355, 26 L. Ed. 290. Although the respondent Auerbach submitted a bid for the property, yet he expressly reserved his legal rights as a surviving partner, and there is nothing to justify the inference that he had any intention to waive his standing as such partner. Nor are the facts and circumstances disclosed by the record such as to estop him from questioning the jurisdiction of the court or disputing the validity of the sale.

We do not deem it important to discuss any other question presented. Upon careful examination and consideration, we are satisfied that the court did not err in refusing to confirm the sale. The judgment is affirmed, with costs.

*Miner, C. J.*, and *Baskin, J.*, concur.